UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

THOMAS W. JOHNS AND KATHRYN E.
JOHNS,

          Debtors.

_____/

Case No. 09-01172
Hon. Scott W. Dales
Chapter 7

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN,

          Plaintiff,

v.

KATHRYN E. JOHNS,

          Defendant.

_____/

Adversary Pro. No.  09-80112

**OPINION GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT**

PRESENT:    HONORABLE SCOTT W. DALES
                     United States Bankruptcy Judge

Thomas and Kathryn Johns filed their voluntary Chapter 7 bankruptcy petition on

February 6, 2009.  Farm Bureau Mutual Insurance Company of Michigan (the "Plaintiff") filed a

Complaint to Determine Dischargeability of Indebtedness pursuant to 11 U.S.C. §§ 523(a)(2), (4)

and (6) against Kathryn Johns (the "Defendant").  On November 12, 2009, the Plaintiff filed a

motion for summary judgment (the "Motion," DN 19).  The Defendant opposes the Motion.

**Page 2 of 9**

## I. JURISDICTION.

The court has jurisdiction over the Defendant's bankruptcy case pursuant to 28 U.S.C. § 1334(a), and this adversary proceeding falls within the court's "core jurisdiction" because it involves the dischargeability of a particular debt.  28 U.S.C. § 157(b)(2)(I).

## II. SUMMARY JUDGMENT STANDARDS.

A movant will prevail on a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Lenning v. Commercial Union Ins. Co., 260 F.3d 574 (6th Cir. 2001).

## III. MATERIAL AND UNDISPUTED FACTS.

On July 13, 1996, the Defendant's now-deceased husband, Gilbert Stansell, was seriously injured in a car accident.  At the time of the accident, Plaintiff insured Mr. Stansell and had a statutory duty pursuant to MCL § 500.3107 to cover Mr. Stansell's costs incurred for products, services and accommodations for his care, recovery and rehabilitation.  To fulfill this obligation, the Plaintiff paid for a Ford van (the "Ford Van") modified to include a wheelchair lift and a lock down mechanism.  The Plaintiff was listed as a lien holder on the title to the Ford Van.

After Mr. Stansell complained that the Ford Van failed to meet his needs, the Plaintiff agreed to provide another vehicle.  On April 12, 2001, the Plaintiff sent a check made payable to Mr. Stansell in the amount of $39,852.86, (Pl. Mot S.J. Exh. B), to pay for a 2000 Dodge Caravan (the "Caravan").  In a letter accompanying the draft, (Pl. Mot S.J. Exh. B), the Plaintiff stated:  "As Farm Bureau is the lien holder on the old van, we must be listed as the lien holder on

the new van." By her own admission, the Defendant knew the Plaintiff expected her and Mr. Stansell to list the Plaintiff as a lien holder on the Caravan. (Johns's Dep. P. 13).

Nevertheless, the Defendant and Mr. Stansell failed to note the Plaintiff's interest on the Caravan's certificate of title (Johns's Dep. P. 15). Instead, in less than a year and a half after the Plaintiff supplied the funds for the Caravan, the Defendant and Mr. Stansell used the Caravan as collateral in exchange for loans from two separate lenders (Pl. Mot. S.J. Exh. D and E).

Mr. Stansell died unexpectedly on May 10, 2003 (Pl. Mot S.J., Exh. F). Within a fortnight, the Plaintiff's representative phoned the Defendant and told her that the company would be retrieving the Caravan (John's Dep. P. 21). On May 21, 2003, the Defendant received a letter from the Plaintiff advising her that "[w]e need to set up a time that we can come and pick up the van." (Pl. Mot S.J., Exh. G). Ignoring Plaintiff's statements and its asserted interest in the Caravan, the Defendant never contacted the Plaintiff to set up a time, but instead promptly advertised the Caravan for sale in the newspaper (John's Dep. P. 26-27). She sold it to Helen and Michael Sharpe for $26,000.00 on July 4, 2003. (Pl. Mot. S.J. Exh. H). The Defendant knew the Plaintiff did not authorize her to sell the Caravan (John's Dep. P. 28) and she did not turn over the proceeds to the Plaintiff, but used them to pay loans, funeral expenses and other outstanding bills (John's Dep. P. 31-32).

The foregoing facts are not disputed, and will be deemed established in this action. See Fed. R. Civ. P. 56(d) (Case Not Fully Adjudicated on the Motion).

### IV.  DEFENDANT'S ASSERTIONS.

In defense of her sale of the Caravan, the Defendant advances two arguments.

First, because the Plaintiff's agents never picked up the Ford Van after saying they would, the Defendant did not believe they would come to get the Caravan either. Second, when

she and her then-husband took delivery of the Caravan, the Defendant says she asked the dealership staff whether the Plaintiff should be on the title. They responded that if the Plaintiff wanted its name on the title, it would be there. The Defendant further states that when she and Mr. Stansell used the Caravan as collateral for two separate loans, the Plaintiff never objected.[1]

Consequently, despite the Defendant's personal knowledge that the Plaintiff was depending upon her and Mr. Stansell to put its name on the title certificate, and the Plaintiff's later oral and written reiteration of its claim of right in the vehicle, the Defendant says she thought the Plaintiff had no right, title or interest in the Caravan and therefore she felt free to sell it.

## V.  LEGAL ANALYSIS.

Under 11 U.S.C. § 523(a)(6), when a debtor injures a creditor by converting  property, the debt is nondischargeable if the conversion was "willful and malicious." In re Simmons, 9 B.R. 62 (Bank. S.D. Fla. 1981); 2 Collier on Bankruptcy, ¶ 53.16[3] n. 35 (15th Ed.1984). "An injury under 11 U.S.C. § 523(a)(6) must constitute an invasion of the creditor's legal rights." Steier v. Best (In re Best), 109 Fed. Appx. 1, 9 (6th Cir. 2004). Except with respect to technical conversions, "[t]he sale of property subject to a security interest by a debtor without payment of the debt so secured is a willful and malicious conversion." In re Auvenshine, 9 B.R. 772, 775 (Bankr. W.D. Mich. 1981). Under 11 U.S.C. § 523(a)(6), an injury to a secured creditor occurs when the creditor's collateral is wrongly and improperly disposed of and the proceeds are used for purposes other than payment of the obligation the property secured. In re Stollman, 404 B.R. 244 (Bankr. E.D. Mich. 2009). Therefore, when the Defendant sold the Caravan and used the

---

[1]Nothing in the record, however, suggests that Plaintiff knew of the encumbrances at the time, so the court puts very little stock in Plaintiff's supposed silence.

sale proceeds to pay other unsecured creditors, the Defendant may have violated the Plaintiff's legal rights.

The Defendant's deposition establishes, and the Defendant does not dispute, that she sold the Caravan and used the sale proceeds for her own purposes. She also admitted that she knew the Plaintiff expected her and Mr. Stansell to place its name on the Caravan's title (John's Dep., p. 13) and that the Plaintiff continued to assert its rights orally (Johns's Dep., p. 21) and in writing (Pl. Mot. S.J., Exh. G). Yet, the Defendant not only refused to turn over the property, but intentionally sold it. Even though the Defendant repeatedly stated in her deposition and pleadings that had she known the Caravan was not hers to sell, she never would have sold it, she *did know* that the Plaintiff consistently asserted rights in the Caravan, and she *did know* that her sale of the Caravan shortly after Plaintiff reiterated its demand might violate the Plaintiff's rights. With full knowledge of the Plaintiff's claim of interest, she nevertheless treated it as her own.

The Defendant admitted that she used the sale proceeds to pay her own expenses, and that she did not remit them to the Plaintiff despite its demand. Given the Defendant's admissions regarding her knowledge of the Plaintiff's repeated assertions of its rights in the Caravan, and assuming the Caravan in fact belonged to the Plaintiff (or at least, the Plaintiff had superior rights in it), a reasonable fact finder could conclude, under the circumstances, that the Defendant's sale of the Caravan and use of proceeds was willful and malicious.

As for the Plaintiff's allegations under 11 U.S.C. § 523(a)(4), the bankruptcy statutes do not provide a definition of embezzlement, but the courts have adopted an established definition. Embezzlement requires that the debtor lawfully obtain possession or control of another person's property and fraudulently put the property to a use that the other person did not authorize or

intend.  Brady v. McAllister (In re Brady), 101 F.3d 1165, 1172-1173 (6th Cir.1996); Spinoso v. Heilman (In re Heilman), 241 B.R. 137 (Bankr. D. Md. 1999); Digital Commerce, Ltd. v. Sullivan (In re Sullivan), 305 B.R. 809 (Bankr. W.D. Mich. 2004); Ball v. McDowell (In re McDowell), 162 B.R. 136, 140 (Bankr. N.D. Ohio 1993).

There is no dispute that the Plaintiff agreed to buy the Caravan and allow Mr. Stansell and his caregiver (the Defendant) to use it.  Therefore, the Defendant lawfully acquired possession of the Caravan as Mr. Stansell's primary caregiver and driver.  After Mr. Stansell died, however, the Plaintiff instructed the Defendant to surrender the Caravan because, according to the Plaintiff, it had only agreed to provide transportation for its insured -- Mr. Stansell.  After Mr. Stansell died, the Defendant had no right to continued possession according to Plaintiff, yet she retained the vehicle, disposed of it, and kept the sale proceeds.  The Defendant admitted that she knew at the time she sold the Caravan that the Plaintiff did not authorize the transaction. (Johns's Dep. P. 28).  She then took the sale proceeds and used them in a way not intended by the Plaintiff.  That is, she used them to pay her own bills.  Consequently, a reasonable fact finder might conclude that the Defendant's use of the proceeds from the sale of the Caravan gave rise to a non-dischargeable debt within the scope of 11 U.S.C. § 523(a)(4).

The court has more doubt about the applicability of 11 U.S.C. § 523(a)(2) because the facts as alleged do not fit the usual paradigm of a defendant's procuring property through fraudulent misrepresentation at the outset, but the court need not resolve the issue before trial.

Each of the Plaintiff's claims depends upon the court's finding that Plaintiff had a superior interest in the Caravan, and that the Defendant acted willfully and maliciously, or fraudulently, in selling the Caravan and keeping the proceeds.  Here, however, the Defendant does not concede that the Plaintiff had a superior interest in the Caravan from the start, and she

contends that she did not believe the Plaintiff would exercise its supposed rights because, even assuming the Plaintiff's interest, it had waived them. Although her deposition and affidavit testimony, if credited, might have supported her position that she acted innocently and in ignorance that her actions violated the Plaintiff's rights in the Caravan prior to Mr. Stansell's death, the undisputed facts surrounding the Defendant's disposition of the Caravan -- especially that she placed an advertisement in a newspaper shortly after the Plaintiff unequivocally demanded that she return the Caravan -- persuade the court that she did not act in ignorance of Plaintiff's supposed interest. In other words, if in fact the court concludes the Plaintiff had a superior interest in the Caravan, then the Defendant acted at her peril in wholly disregarding the Plaintiff's superior position. Under the circumstances, if the court concludes that the Plaintiff had a superior interest in the Caravan, the court would perforce conclude that the Defendant acted willfully and maliciously[2] by disposing of the Caravan. Consequently, the circumstances surrounding the sale and retention of the proceeds would provide ample reason to except the resulting debt from discharge. Her statements to the effect that she would not have acted as she did had she known the Plaintiff truly had a superior interest in the Caravan will not carry the day given the Plaintiff's unequivocal demand, assuming the Plaintiff in fact enjoyed a superior interest. Simply put, after the Plaintiff clearly demanded the Caravan's return, the Defendant acted at her own peril by selling the vehicle and pocketing the proceeds.

If the court were to make a forecast based upon the present record, it would be inclined to find that the Defendant's disregard of the Plaintiff's asserted rights in the Caravan was willful and tainted by fraud, especially because she sold the property and pocketed the proceeds after receiving the Plaintiff's oral and written demand for its return. However, the court's task on a

---

[2] "Malicious" is defined as "in conscious disregard of one's duties or without just cause or excuse." Gonzalez v. Moffitt ( In re Moffitt), 252 B.R. 916, 923 (6th Cir. BAP 2000); Monsanto Co. v. Trantham (In re Trantham), 304 B.R. 298, 308 (6th Cir. BAP 2004); Qui v. Zhou (In re Zhou), 331 B.R. 274 (Bankr. E.D. Mich. 2005).

motion for summary judgment is not to predict the trial outcome, but to spot genuine issues of material fact and, if practicable, narrow the issues.

Here, the Defendant does not concede that the Plaintiff in fact had a superior interest in the Caravan. Indeed, the court would have expected the Plaintiff to support its motion with excerpts from the insurance policy, other contractual documents, or regulations establishing its superior interest. Although implausible given the Plaintiff's lien on the Ford Van, it is not unthinkable that an insurance company would pay a claim without obtaining security for repayment or recovery of the insurance benefits at issue -- here the modified vehicles. It is also possible that an insurance company, or its agents, might demand to have a lien noted on a certificate of title mistakenly believing the insurer had such a right, or perhaps for a less-innocent reason. In other words, the unilateral assertion of a security interest in the Caravan does not, *ipso facto*, establish such an interest. Title or security issues are naturally the subject of contract, or insurance regulation, yet the Plaintiff offered no insurance policy or other contract document, and no statutory or regulatory authority in support of its interest. At most, the Plaintiff offered the fact that it obtained a lien on the Ford Van and that it asked Mr. Stansell to continue the lien on the Caravan. On this motion for summary judgment, the court will not infer that the Plaintiff had a superior interest without an undisputed evidentiary showing because, on such a motion, the court draws inferences against the moving party.

Because the Plaintiff has not produced any documentation regarding its interest or the extent or priority of its interest, the court will hold a trial to determine these issues. Should the Plaintiff be unable to prove the extent, nature, and priority of its allegedly superior interest in the Caravan by a preponderance of the evidence, the court will enter judgment in the Defendant's favor; on the other hand, if the Plaintiff establishes to the court's satisfaction that it held a

superior interest in the Caravan at the time the Defendant sold it, the court will enter a judgment against the Defendant excepting all or some portion of the resulting debt from discharge, depending upon the extent of Plaintiff's damages (to be proven).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 19) is GRANTED IN PART and DENIED IN PART, and this matter shall proceed to trial to determine the extent, nature, and priority of the interest, if any, that the Plaintiff held in the Caravan.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon John M. Roels, Esq., attorney for Plaintiff and James Anthony Siver, Esq., attorney for Defendant.

**IT IS SO ORDERED.**



Scott W. Dales
United States Bankruptcy Judge

**Dated: December 23, 2009**